UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      -against-                              1:07-CR-556
                                            (LEK)

LAMAR ERWIN,

                Defendant.

_____

## <u>ORDER</u>

Before this Court is an Omnibus Motion, filed by Lamar Erwin ("Defendant" or "Erwin") on June 16, 2008, seeking dismissal of the indictment, suppression of statements made by Erwin, and suppression of physical evidence seized by the Government from Erwin's residence. Omnibus Motion (Dkt. No. 13). Also before the Court is a supplemental Motion to dismiss, filed by Defendant on July 1, 2008, supplementing the prior Motion to dismiss the indictment based on the Supreme Court's decision in <u>District of Columbia v. Heller</u>, ___ U.S. ____, 128 S.Ct. 2783 (2008). Supplemental Motion (Dkt. No. 14).

**I.      Background**

Defendant is charged in a two count indictment with knowingly making a false and fictitious written statement to a Federal Firearms Licensed dealer (FFL), which was likely to deceive the FFL as to a fact material to the lawfulness of Defendant's acquisition of a Mossberg Maverick shotgun under Chapter 44 of Title 18, in violation of 18 U.S.C. §§ 922 (a)(6) and 924 (a)(2), and with knowingly possessing in and affecting commerce a Mossberg Maverick shotgun,

in violation of a court order as described in 18 U.S.C. § 922 (g)(8), in violation of 18 U.S.C. §§ 922 (g)(8) and 924 (a)(2).  Indictment (Dkt. No. 7).

II.    **Discussion**

    A.    **Dismissal of the Indictment**

Defendant claims that his Indictment should be dismissed in light of the Supreme Court's recent decision in District of Columbia v. Heller, ___ U.S. ____, 128 S.Ct. 2783 (2008). Defendant argues that 18 U.S.C. §§ 922(g)(8) and 922(a)(6) are unconstitutional because they "categorically prohibit people from possessing any type of firearm based on considerations which, it is submitted, cannot stand under Heller."  Supplemental Motion at 1.  The claimed unconstitutionality of Section 922(a)(6) is based on the argument that the only reason that the statement made by Defendant–that he was not the subject of a court order–was material was because of Section 922(g)(8).  Id. at 2.  Defendant argues that an "outright ban on the possession of a simple shotgun" by someone "only alleged to be the subject of an order of protection, fails to pass constitutional muster under Heller."  Id. at 5.  Erwin also claims that these provisions "are even harsher than the District of Columbia statute invalidated in Heller," based on a comparison of the possible sentences.  Id. at 4-5.

In Heller, the Supreme Court determined that "the Second Amendment conferred an individual right to keep and bear arms," albeit not an unlimited right.  128 S.Ct. at 2799, 2816. In identifying broadly the scope of the limitations on that right, the Supreme Court emphasized that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms

2

in sensitive places such as schools and government buildings, or **_laws imposing conditions and qualifications on the commercial sale of arms_**." Id. at 2816-17 (emphasis added).  The Court added that "[w]e identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." Id. at 2817 n. 26.

The Supreme Court thus distinguished between broad proscriptions of constitutional rights generally among all people, such as the statute in question in Heller[1], and other statutes that merely restrict or regulate the commercial sale of firearms, such as those in § 922, sections of which the Court specifically mentioned as "longstanding prohibitions" that will withstand constitutional analysis post-Heller.  The Court made clear that "[f]ew laws in the history of our nation have come close to the severe restriction of the District's handgun ban."  Id. at 2818.

Thus, for example, the court in United States v. White, a § 922 post-Heller case alleging a Second Amendment violation, noted that "[o]n its face, then Heller did not disturb or implicate the constitutionality of § 922(g)" and further stated that "no court has, even under an individual rights interpretation of the Second Amendment, found 18 U.S.C. § 922(g) constitutionally suspect." United States v. White, 2008 WL 3211298 (S.D.Ala. Aug 6, 2008) (citing United States v. Walters, 2008 WL 2740398 (D.V.I. July 15, 2008)).

Turning more specifically to the provision in question here, the crime in § 922(g)(8) is not an outright ban on firearm possession like the situation in Heller.  Instead, the restriction lasts only as long as the underlying state court order is in effect.  The scope of the prohibition is also

---

[1] The statute found unconstitutional in Heller generally prohibited the possession of handguns as well as the possession in the home, by any person, of any useable firearm (one that would be operable for the purpose of immediate self-defense).  128 S.Ct. at 2788.

3

quite narrow, since it applies only if the pertinent court order:

>    (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

>    (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
>    (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury.

18 U.S.C. § 922(g)(8).

Reducing domestic violence is a compelling government interest, see, e.g., United States v. Lippman, 369 F.3d 1039, 1043 (8th Cir. 2004), cert. denied, 543 U.S. 1080 (2005), United States v. Calor, 340 F.3d 428, 432 (6th Cir. 2003), Henderson v. City of Simi Valley, 305 F.3d 1052, 1057 (9th Cir. 2002), and 922(g)(8)'s temporary prohibition, while the state court order is outstanding, is narrowly tailored to that compelling interest.[2]  Accord United States v. Emerson, 270 F.3d 203, 262-63 (5th Cir. 2001) (finding that the Second Amendment protects individual rights, but nevertheless upholding § 922(g)(8)).  The threatened conduct that is a prerequisite to the prohibition is serious: "harassing, stalking, threatening," or other conduct that would cause "reasonable fear of bodily injury"; and the court order must make a specific finding of "a credible threat to the physical safety" of an intimate partner or child or an explicit prohibition on the use of force "that would reasonably be expected to cause bodily injury."  18 U.S.C. § 922(g)(8).

---

[2] The Supreme Court majority in Heller expressly "declin[ed] to establish a level of scrutiny for evaluating Second Amendment restrictions," leaving that question to be settled later.  128 S.Ct. at 2821.  Since the Court finds that Section 922(g)(8) passes muster under any standard, it is unnecessary to determine the standard of review.

These are narrowly crafted limits on when a citizen may possess a firearm and well tuned to the legitimate concerns of avoiding serious physical injury to a partner or child.  <u>See</u> <u>also</u> United States v. Booker, 2008 WL 3411793 (D.Me. August 11, 2008) (upholding section 922(g)(9) post-<u>Heller</u> after comparing the 922(g)(9) prohibition for persons convicted of misdemeanor crimes of domestic violence to the prohibitions for the mentally ill or convicted felons and finding no distinction between the categories as predictors of firearm violence).

Therefore, <u>Heller</u> does not make the prohibition in Section 922(g)(8) unconstitutional. Since the prohibition is still valid, the related answer to the question on the ATF form (question 11.h) remains "material to the lawfulness of the sale" under 18 U.S.C. § 922(a)(6).  Defendant's Motion to dismiss the Indictment is thus denied.

**B.       Suppression of statements**

Defendant seeks to suppress statements attributed to him by law enforcement officers on the day of his arrest.  Motion at 4-5 (Dkt. No. 13).

A defendant is not entitled to an evidentiary hearing unless he or she can show that there is a contested issue of material fact with respect to the issue for which the hearing is requested. <u>See</u> United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992).  "An evidentiary hearing need not be granted as a matter of course and generally will be held only if the moving papers allege facts with sufficient definiteness, clarity and specificity to enable the trial court to conclude that relief must be granted if the facts alleged are proved."  <u>United States v. Cady</u>, 1996 WL 650662, at *9 (N.D.N.Y. Nov. 5, 1996) (McAvoy, C.J.) (quoting <u>United States v. Carrion</u>, 463 F.2d 704, 706 (9th Cir. 1972)).

5

Defendant claims that (1) the interrogation began before Miranda warnings were given, (2) any Miranda warnings given were incomplete and not fully understood by Defendant, and (3) that Defendant was pressured to talk by several armed agents and that his will was overcome by pressure and coercion so that any statements elicited were not voluntary. Motion at 4-5 (Dkt. No. 13). Defendant also claims that the statements should be suppressed as the poisonous fruit of an improperly obtained search warrant. Id. at 5. Defendant's claims present material factual inconsistencies with the Government's allegations that Defendant was read his Miranda warnings and made a knowing, willing, and intelligent waiver of those rights before making the statements in question. Response at 9-10 (Dkt. No. 21). Indeed, the Government consents to a hearing in this matter in order to resolve the factual disputes. Accordingly, a pretrial hearing will be held to determine these issues.

### C.      Suppression of physical evidence

Defendant seeks to suppress physical evidence seized from his residence based on a claim that the search warrant was improperly obtained and executed.

#### 1.      Legal Standard

"Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." Illinois v. Gates, 462 U.S. 213, 235 (1983) (citation omitted). The standard is even lower than the preponderance of evidence standard. United States v. Bakhtiari, 913 F.2d 1053, 1062 (2d Cir. 1990). Moreover, "a magistrate's determination of probable cause should be paid great deference by reviewing courts." Gates, 462 U.S. at 236 (internal quotation marks and citation omitted); see also United States v. Singh, 390 F.3d 168, 181-183 (2d Cir. 2004); United

States v. Rosa, 11 F.3d 315, 326 (2d Cir. 1993).

The Court's review of a magistrate's determination that probable cause existed thus begins with the proposition that the magistrate's finding of probable cause is entitled to "great deference." United States v. Smith, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting Illinois v. Gates, 462 U.S. at 236). The magistrate's finding that there was probable cause is itself "a substantial factor tending to uphold the validity of [the] warrant." United States v. Travisano, 724 F.2d 341, 345 (2d Cir. 1983).

The reviewing court need not review *de novo* the papers submitted to the magistrate, but must instead determine whether the magistrate "performed his neutral and detached function on the facts before him, and did not merely serve as a rubber stamp for conclusions drawn by the police." Id. Further, in examining the magistrate's finding, there is "a presumption of validity with respect to the affidavit supporting the search warrant." Franks v. Delaware, 438 U.S. 154, 171 (1978). Any doubt about the existence of probable cause is to be resolved in favor of upholding the warrant. United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998); Travisano, 724 F.2d at 345.

## 2. Search warrant application

In the application for the search warrant, Special Agent Meeks stated that he was personally informed that on June 11, 2007 Erwin paid for and took possession of the shotgun from Taylor and Vadney. This was based on Special Agent Meeks' interview of the employees at Taylor and Vadney and the receipt for the firearm. Special Agent Meeks also observed Erwin's court order, as well as the ATF Form that Erwin filled out in order to purchase the

shotgun, which included his address and his answer to the question regarding being subject to a court order.  Special Agent Meeks also confirmed, by separate investigation, that the address Erwin listed on the ATF Form was his actual residence.  Response, Exh. D (Dkt. No. 22).

### 3.    Discussion

As an initial matter, the Defendant notes that DEA Report Number 7 states that Erwin was arrested on September 6, 2007 during the execution of the search warrant, and that DEA Report Number 8 states that Special Agent Maher examined the seized evidence on September 6, 2007, while Report Number 4 states that the search warrant was executed on September 7, 2007. Motion at 5-6 (Dkt. No. 13).  However, the relevant analysis in determining whether the warrant was properly obtained depends only on whether the contents of the search warrant application establish probable cause.  See United States v. Leon, 468 U.S. 897, 936-66 (1984).

On September 5, 2007, Magistrate Judge David R. Homer made a finding of probable cause and issued the search warrant.  See Search Warrant, Response, Exh. D (Dkt. No. 22).  On September 6, 2007, the warrant was executed and Erwin was both arrested and appeared before Judge Homer for an initial appearance.  See Judge Homer's 9/6/07 Order (Dkt. No. 2); Arrest Warrant executed 9/6/07 (Dkt. No. 4); and Minute Entry for Detention Hearing held on 9/6/07 before Judge Homer.  A discrepancy of the date of the search warrant's execution on a subsequent DEA report does not affect Judge Homer's finding of probable cause or the validity of the warrant's issuance or execution, and is therefore not relevant to this Court's analysis.

Defendant next argues that the search warrant was improperly issued because probable cause was not established.  Defendant argues that the application for the warrant relied on

"anonymous informants" without establishing that they were reliable or credible.  The Defendant

thus seeks suppression of the physical evidence, or in the alternative, a hearing pursuant to

Franks v. Delaware, 438 U.S. 154 (1978).  Motion at 6-7 (Dkt. No. 13).

In considering the source of the information in this case, the employees were not agents

of law enforcement or anonymous and they had no motivation to provide false information.  In

addition, the only information that was provided by the employees was that Erwin took

possession of the firearm on June 11, 2007.  The employees were the ones who were present and

assisted Erwin with the firearm purchase.  In addition, this information was also based on a

receipt for the firearm.  Response, Exh. D at 3 (Dkt. No. 22).

The Court thus finds both that (1) the informants were not the only source of the

information in the search warrant application, and that (2) there was a "substantial basis" for

crediting the information of the informants.  United States v. Burke, 517 F.2d 377, 381 (2d Cir.

1975) (finding that warrant had substantial basis for warranting hearsay of informer where

informer had basis for his knowledge from interacting with defendant, even though affidavit did

not state that informer was known to affiant to be a reliable informant).

At most, Defendant suggests that the employees may have made a false statement to

Special Agent Meeks, which was then included as part of his basis for the search warrant

application.  However, this argument lacks merit, and no Franks hearing is needed, since

Defendant has not made "a substantial preliminary showing that a false statement knowingly and

intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant

affidavit" and the Court does not find that any "allegedly false statement" by the employees "is

9

necessary for the finding of probable cause" <u>Franks</u>, 438 U.S. at 155-56.

First, even if the employees had made a false statement, that is not sufficient to establish that Special Agent Meeks made a false statement "knowingly and intentionally, or with reckless disregard for the truth." <u>Id.</u>  Even when a private informant knowingly or recklessly makes a false statement to an affiant, "that does not present grounds to challenge the search warrant as long as the affiant in good faith accurately represents what the informant told him." <u>United States v. Wapnick</u>, 60 F.3d 948, 956 (2d Cir. 1995) .  In addition, the information supplied by the employees was verified by the receipt of the firearm purchase, which would establish a sufficient alternate basis for the information in the application.  <u>Franks</u>, 438 U.S. at 171-72 ("if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause . . .," then probable cause exits);  <u>Soares v. Connecticut</u>, 8 F.3d 917, 920 (2d Cir. 1993).

Finally, even if the Court had determined that the search warrant was lacking in probable cause, the evidence seized would be admissible under the good faith exception to the exclusionary rule.  <u>United States v. Cancelmo</u>, 64 F.3d 804, 807-08 (2d Cir. 1995) (citing <u>United States v. Leon</u>, 468 U.S. 897 (1984)).  The Court in <u>Leon</u> identified four situations in which the good faith exception is inapplicable.  Specifically, an executing officer's reliance on a search warrant will not be deemed to have been in good faith:

> (1) where the issuing magistrate had been knowingly misled;
> (2) where the issuing magistrate wholly abandoned his or her judicial role;
> (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and
> (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

10

United States v. Leon, 468 U.S. 897, 923 (1984); see also United States v. Tisdale, 195 F.3d 70, 72 (2d Cir.1999) ("The exclusionary rule does not apply to evidence obtained by a police officer whose reliance on a search warrant issued by a neutral magistrate was objectively reasonable, even though the warrant is ultimately found to be defective.").[3]  The Court could not conclude based on the record in this case that any of those situations apply here.

The Court therefore finds that the search warrant application sufficiently established probable cause to search the Defendant's residence.  Accordingly, the search warrant was properly issued, and no Franks hearing or suppression hearing is necessary.  Defendant's Motion to suppress the physical evidence seized pursuant to the search warrant is thus denied.

## III.     Conclusion

Accordingly, it is hereby

**ORDERED**, that Defendant's Supplemental Motion to dismiss the indictment (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion to suppress physical evidence seized from

---

[3] The good faith exception has also been applied in situations where the record provided no basis for finding that an unnamed informant was reliable.  United States v. Monk, 499 F.Supp.2d 268 (E.D.N.Y. 2007) (Even if warrant to search apartment was not supported by probable cause because there was no indication that the unnamed informant was previously reliable or had given information in the past, the good-faith exception to the exclusionary rule applied to evidence seized pursuant to the warrant, even though the warrant was based in part on the affidavit and testimony of a police officer who then helped execute the warrant, since defendant did not identify a single false piece of testimony before the justice who issued the warrant); United States v. Sykes, 424 F.Supp.2d 590 (W.D.N.Y. 2006) (Notwithstanding the absence of any information concerning the reliability of the informants, under the Leon "good faith" exception to the exclusionary rule, even if a defendant makes a showing that a search warrant lacks probable cause, suppression is still not warranted if the government can demonstrate that the officers were entitled to rely reasonably on the warrant's apparent validity).

Defendant's residence (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED**, that a suppression hearing will be held on Wednesday, November 5, 2008 at

9:00 a.m. to determine the admissibility of statements made by Defendant to law enforcement

officers; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:        October 06, 2008
                       Albany, New York

Lawrence E. Kahn
U.S. District Judge

12